UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

BRANDON SCROGGIN                                                       PLAINTIFF

V.                              CASE NO. 4:16cv164-KGB

STELLAR RECOVERY, INC.,                                                DEFENDANT
A FLORIDA CORPORATION

## COMPLAINT

Comes now the Plaintiff, Brandon Scroggin (hereinafter "Scroggin"), by and through his attorneys, Leigh Law, PLLC, and for his Complaint against Defendant Stellar Recovery, Inc. (hereinafter "SRI"), and respectfully states as follows:

### INTRODUCTION

Plaintiff brings this Complaint seeking statutory, actual, and punitive damages, as well as attorney's fees and costs, and an Order from this Court directing SRI to remove its illegal negative reporting from Scroggin's TransUnion credit report, for violations of the *Fair Debt Collection Practices Act (hereafter "FDCPA") § 15 U.S.C. 1692 et seq., Arkansas Fair Debt Collection Practices Act (hereafter "AFDCPA") § 17-24-101 et seq., Arkansas Deceptive Trade Practices Act (hereafter "ADTPA") A.C.A. §§ 4-88-101 through 4-88-115,* the *Fair Credit Reporting Act 15 USC § 1681 et seq.* common law fraud, and Promissory Estoppel.

### JURISDICTION AND VENUE

1.  Jurisdiction in conferred on this Court pursuant to *15 U.S.C. § 1692k(d); A.C.A. § 17-24-512(d); A.C.A. § 4-88-113(f); 15 USC § 1681p;* and *28 U.S.C. § 1331.*

2.  Venue is proper as all alleged conduct took place while the Plaintiff was residing in North Little Rock, Arkansas.

### PARTIES

3.  Scroggin is an individual, natural person, and a consumer, residing in North Little Rock,

Arkansas; and was an "individual", "natural person", and a "consumer" at all times as alleged in this Complaint.[1]

4. SRI, located at 4500 Salisbury Rd Suite 105, Jacksonville, Florida, 32216 is a "debt collector", in so far as debt collector is defined pursuant to *15 U.S.C. § 1692a(6)* and *A.C.A. § 17-24-502(5)(A)*,[2] a "person" as defined pursuant to the *A.C.A. § 4-88-102(5)*[3], and a furnisher of information to consumer credit reporting agencies.

## RELEVANT PRECEDENT AND STATUTORY STRUCTURE OF THE FDCPA AND THE AFDCPA

5. Scroggin incorporates by reference and re-alleges paragraphs (1) through (4).

6. "The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors,' ... and debt collectors are liable for failure to comply with 'any provision' of the Act." Richmond v. Higgins, 435 F.3d 825, 828 (8th Cir.2006) (quoting 15 U.S.C. §§ 1692(e), 1692k(a)) (internal citations omitted).

7. Whether conduct violates the FDCPA is to be determined by analyzing the conduct from the perspective of the least sophisticated consumer. Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001)(quoting, Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000).

8. A debt collector who misrepresents the character, amount, or legal status of any debt violates the FDCPA. *15 U.S.C. § 1692e(2)(A) & A.C.A. § 17-24-506(a)*.

---

[1] Pursuant to *15 U.S.C. § 1692(a)(3) & A.C.A. § 17-24-502(2)*, a "consumer" means any natural person obligated or allegedly obligated to pay any debt. Pursuant to *15 U.S.C. § 1681a(c)*, a consumer means an individual; pursuant to *15 U.S.C. § 1681a(b)* the term "person" means an individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.

[2] A "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. *15 U.S.C. §1692a(6) & A.C.A. § 17-24-502(5)(A)*.

[3] *A.C.A. § 4-88-102(5)* defines a person as, an individual, organization, group, association, partnership, *corporation*, or any combination of them.

9. Debt collectors may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. *15 U.S.C. § 1692e & A.C.A. § 17-24-506(a)*.

10. A debt collector is not allowed to use any unfair or unconscionable means in the connection with the collection of any debt. *15 U.S.C. § 1692f & A.C.A. § 17-24-507(a)*.

11. Reporting to a credit reporting agency [credit bureau] is a communication under the FDCPA. See, Edeh v. Midland Credit Mgmt., Inc WL 3893604 (D. Minn. Sept 29, 2010)("The court has learned through its work on countless FDCPA cases that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver")).[4]

12. The FDCPA also contains a specific provision applicable to debt collectors when they communicate with a CRA as it relates to a disputed debt, which states:

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section – "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *15 U.S.C. § 1692e(8)*.

13. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector **shall** [emphasis added], unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

---

[4] See also, See also, Rivera v. Bank One, 145 F.R.D. 614 (D. P.R. 1993); accord Blanks v. Ford Motor Credit, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is a communication in connection with collection of the debt); Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting debt is "in connection with" debt collection); Sullivan v. Equifax, 2002 WL 799856, 2002 U.S. Dist. LEXIS 7884, at *15 (E.D. Pa. Apr. 19, 2002) (reporting a debt is a powerful collection tool); Ditty v. CheckRite, Ltd., 973 F. Supp. 1320, 1331 (D. Utah 1997) (reporting bad check information to others is designed to give collector additional leverage over debtor); In re Sommersdorf, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991).

(1) The amount of the debt;

(2) The name of the creditor to whom the debt is owed;

(3) A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) A statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. *15 U.S.C. 1692g.*

14. The bona fide error defense is limited to clerical errors. <u>Picht v. Jon R. Hawks, Ltd.</u>, 236 F.3d 446, 451 (8th Cir. 2001).

15. The FDCPA's bona fide error defense does not shield a debt collector from liability when it relies on information from the creditor. <u>Owen v. LC. System, Inc.</u>, 629 F.3d 1263 (11th Cir. 2011).

## STATUTORY STRUCTURE OF THE ADTPA[5]

16. Scroggin incorporates by reference and re-alleges paragraphs (1) through (15).

17. Engaging in any unconscionable, false or deceptive act or practice in business, commerce or trade violates the ADTPA. *A.C.A. § 4-88-107(a).*[6]

---

[5] A private right of action under the ADTPA lies in *§4-88-113*.

[6] The Arkansas Supreme Court has interpreted this language as a broad catch-all provision that encompasses conduct defined as deceptive under other substantive areas of law. *See, e.g.,* <u>Bryant</u>, 336 Ark. at 295-97, 985 S.W.2d at 302-03.

## STATUTORY STRUCTURE OF THE FCRA

18. Scroggin incorporates by reference and re-alleges paragraphs (1) through (17).

19. The FCRA imposes on the furnishers of information ("furnishers") to a credit reporting agency the obligation to report only accurate information. *15 U.S.C. § 1681s-2(a)(1)*.

20. Furnishers must investigate[7] the information that they have previously reported if a consumer disputes the accuracy or completeness of that information with the CRA. *15 U.S.C. § 1681i*.

21. Furnishers who fail to fulfill its obligations in the reinvestigation process becomes liable to the consumer under the FCRA for actual damages and attorney's fees for a negligent violation, plus additional statutory and punitive damages when the violation is willful. *15 U.S.C. §§ 1681s-2(b), 1681n* (generally creating cause of action for willful noncompliance), *1681o* (generally creating cause of action for negligent noncompliance).

## FACTS COMMON TO ALL COUNTS

22. Scroggin incorporates by reference and re-alleges paragraphs (1) through (21).

23. On or around August of 2015, Scroggin checked his credit reports and noticed SRI was reporting to Scroggin's reports that Scroggin owed $123.00 to Comcast Cable for an alleged defaulted debt.

24. On or about September 2015 through February of 2016, Scroggin, knowing he did not have any outstanding obligation to Comcast or SRI, disputed SRI's negative reporting to Scroggin's credit reports five separate times **directly to the credit reporting agency** [emphasis added].

---

[7] "By its ordinary meaning, an "investigation" requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." See, Gorman v. Wolpoff & Abramson, LLP, 584 F. 3d 1147 (9th Cir. 2009); see also, See also, Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir.2005) ("Whether a defendant's investigation [pursuant to *§ 1681s-2(b)(1)(A)*] is reasonable is a factual question normally reserved for trial.")

25. Each dispute by Scroggin was verified by SRI as being accurate reporting and SRI refused to remove its negative reporting.

26. Irrespective of the fact that Scroggin clearly disputed SRI's reporting to his credit reports, SRI failed to notify the credit reporting agency that Scroggin disputed the information SRI was reporting, and SRI continued to update and report to Scroggin's credit reports after SRI was on written notice that Scroggin disputed the information SRI was reporting.

27. On or about November 2015 through January of 2016, after first disputing directly with the credit reporting agencies, Scroggin sent three different direct disputes to SRI, disputing SRI's reporting and notifying SRI that Scroggin had returned all equipment to Comcast when Scroggin cancelled his service with Comcast.

28. SRI refused to respond to Scroggin's direct disputes and continued to report that Scroggin owed a debt to Comcast; and SRI failed to notify the credit reporting agencies that Scroggin's alleged debt that SRI was reporting was disputed by Scroggin.

29. A no time did SRI send Scroggin his validation/dispute notice as required by the FDCPA and AFDCPA.

30. On January 3, 2016, Scroggin filed a formal complaint with the Consumer Financial Protection Bureau ("CFPB") against SRI.

31. The CFPB complaint Scroggin filed was not a general denial, but laid out the specific reasons Scroggin did not owe the debt SRI alleged he owed.

32. On January 13, 2016, SRI responded to Scroggin's CFPB complaint with the following response:

> "Stellar Recovery is in receipt of a complaint filed by Brandon Scroggin. Our records indicate that Stellar Recovery received a Comcast account in our office on 12-8-2014 for a Brandon Scroggin for Services at 13111 W APT 226 Markeham St Little Rock, AR



> 72211 **We show no contact was made with the consumer.** [emphasis added]. The consumer is indicating that the balance being reported is for equipment charges; however, Stellar's records show that all equipment has been returned and the balance is a remaining service balance. **Based on the Mr. Scroggin's stance** [emphasis added] regarding this account balance, Stellar has submitted for deletion on the consumer credit. Please allow time for the credit reporting agencies to process this request.

33. Although a universal data form[8] faxed to a credit reporting agency will ensure an account is deleted within 24 hours, SRI has not only refused to remove the negative reporting from Scroggin's TransUnion credit report, which it stated in writing to the CFPB it would remove, SRI continues to update Scroggin's TransUnion report with is negative reporting.

34. Scroggin ordered his TransUnion credit report on March 23, 2016, and learned that SRI had recently updated its reporting to Scroggin's TransUnion report just 24 hours prior.

35. Irrespective of the fact that SRI had stated to the CFPB it had already submitted a deletion request of Scroggin's negative reporting on or before January 13, 2016, and SRI was still reporting the account it had promised to deleted, SRI failed to notify TransUnion the information it had recently updated and reported to TransUnion was disputed by Scroggin.

36. On or about February 13, 2016, Scroggin sent a letter to SRI and asked them to check its records, because they [SRI] were still reporting to Scroggin's credit report even though they had responded to the CFPB the account had been requested to be deleted. Scroggin asked SRI in his letter to delete the account which SRI stated to the CFPB it had requested to be deleted.

37. SRI failed to respond to Scroggin's letter, nor did it remove Scroggin's account or notify the credit reporting agency the information SRI was reporting was disputed by Scroggin.

---

[8] A universal data form is a document that a creditor and/or debt collector fills out telling the credit reporting agency how an account should be updated or deleted. Once received by the credit reporting agency, the action requested is updated within 24 hours.

38.  On or about March 3, 2016, Scroggin sent a letter to SRI advising SRI that Scroggin would file a lawsuit against SRI if it did not immediately remove its negative reporting.

39.  SRI failed to respond to Scroggin's demand letter and instead continued its negative reporting, each time failing to notify TransUnion Scroggin disputed the information SRI was reporting.

40.  On March 23, 2016, Scroggin sent an email to bob.peterson@stellarrecoveryinc.com, the compliance director for SRI, and attached among other documents, SRI's response to the CFPB and a copy of SRI's negative reporting from Scroggin's March 22, 2016 TransUnion credit report. Scroggin demanded that SRI immediately fax a universal date form to TransUnion to remove its negative reporting to Scroggin's TransUnion report, and email a copy of the fax confirmation to Scroggin on or before March 25, 2016 at 5:00 PM or Scroggin would file a federal lawsuit against SRI on March 28, 2016.

41.  SRI did not respond whatsoever to Scroggin's email of March 23, 2016.

42.  As of the date of the filing of this Complaint, SRI continues to report to Scroggin's TransUnion report that Scroggin owes Comcast $123.00, which Scroggin does not owe, and continues to fail to report that Scroggin disputes the information SRI is reporting to Scroggin's TransUnion credit report.

43.  On or around February 1, 2016, Scroggin was advised by Highland Pointe Apartments in Little Rock Arkansas, that Scroggin would have to pay the debt to SRI before he would be allowed to rent, because no outstanding telephone, cable or utility bills were allowed on a new tenant's credit report.

44. When Scroggin explained he was in a dispute about the alleged debt, he was advised a month's additional deposit would be required to rent,[9] if, by the time Scroggin moved in, the debt from SRI remained on his credit reports.

45. Each time Scroggin's alleged debt to SRI/Comcast was verified by SRI as accurate, Scroggin became angry, frustrated, stressed, suffered anxiety, experienced loss of appetite and sleep, and suffered emotional distress.

46. Scroggin continues to experience anger, frustration, anxiety, and loss of enjoyment of life, due to SRI's negative reporting.

47. SRI's actions against Scroggin were in connection with the collection of a debt, as SRI was using the credit reporting system to gain leverage over Scroggin, attempting to force Scroggin to pay a debt SRI was attempting, and still is attempting, to collect.

48. SRI, as of the date of this Complaint, has yet to respond to any of Scroggin's numerous demands it comply with the law and fulfill its promise that was made to the CFPB.

## COUNT I: VIOLATIONS OF THE FDCPA

49. Scroggin incorporates by reference and re-alleges paragraphs (1) through (48).

50. SRI communicating to the credit reporting agencies that Scroggin owed a debt he does not owe violates the FDCPA, specifically *15 U.S.C. § 1692e(2)(A)*, as SRI misrepresented the legal status of the account SRI was reporting.

51. SRI, communicating to the credit reporting agencies were also communications to Scroggin that he owed a debt he did not owe. Such conduct violates the FDCPA, as the communications to Scroggin were materially false and deceptive thereby violating *15 U.S.C. § 1692e*.

---

[9] Scroggin was advised an additional deposit of $885.00 would be required.

52. SRI, ignoring the numerous disputes sent directly to them by Scroggin, that Scroggin did not owe the debt SRI was reporting to Scroggins' credit reports, and why, is an action(s) taken by SRI directed toward Scroggin and violates *15 U.S.C. § 1692f*, because such conduct is unfair and/or unconscionable.[10]

53. SRI's failure to notify TransUnion, a consumer reporting agency, the information it was reporting about Scroggin was disputed by Scroggin is conduct that violates *15 U.S.C. § 1692e(8)*.

54. When SRI reported Scroggin's alleged debt to TransUnion on or about December 2014, this was its initial communication to Scroggin which triggered the requirements of *15 U.S.C. § 1692g*. However, as SRI admitted to the CFPB when it stated "[W]e show no contact was made with the consumer [Scroggin]", SRI did not send the *§ 1692g* validation notice to Scroggin, and such conduct violates *15 U.S.C. § 1692g*.

55. SRI violated the FDCPA, *15 U.S.C. §§ 1692f, 1692e*, when it misrepresented to the Consumer Financial Protection Bureau the action it had taken in response to Scroggin's CFPB complaint. This was a material misrepresentation to a third party that directly impacted Scroggin negatively and caused Scroggin damages and continues to damage and injure Scroggin by having a negative impact on his credit score, and forcing Scroggin to pay more for housing than if SRI's negative reporting was not on Scroggin's credit report.[11]

---

[10] "Statutory proscriptions using general terms such as unfairness are to be given effect by considering public values beyond simply those enshrined in the letter or encompassed in the spirit of the statute." See, Federal Trade Commission v. Sperry & Hutchinson Co., 405 U.S. 233 S. Ct. (1972).

[11] "We are unwilling to adopt a broad ruling that false statements not made directly to a consumer debtor are never actionable under § 1692e. See, *Hemmingsen v. Messerli & Kramer, PA*, 674 F. 3d 814 (8th Cir. 2012).

56. The entire manner in which SRI has conducted itself in response to Scroggin's CFPB complaint is unfair and unconscionable conduct in connection with the collection of a debt, targeting Scroggin and causing Scroggin damages and thereby violating *15 U.S.C. §§ 1692f, 1692e.*

57. SRI's violations of the FCRA, specifically *§§ 623(a)(2), 1681s-2(a)(1), 1681s-2(b), 1681n & 1681o* are per se violations of the FDCPA, because debt collection conduct against Scroggin which violates the FCRA are per se violation of the FDCPA, specifically, *15 U.S.C. §§ 1692f, 1692e.*[12]

58. SRI's fraud against Scroggin was in connection with the collection of a debt and is a *per se* violation of the FDCPA, specifically, *15 U.S.C. §§ 1692f, 1692e.*

## COUNT II: VIOLATIONS OF THE AFDCPA

59. Scroggin incorporates by reference and re-alleges paragraphs (1) through (58).

60. SRI communicating to the credit reporting agencies that Scroggin owed a debt he does not owe violates the AFDCPA, specifically, *A.C.A. § 17-24-506(a)* as SRI misrepresented the legal status of the account SRI was reporting.

61. When SRI reported Scroggin's alleged debt to TransUnion, this was its initial communication to Scroggin which triggered the requirements of *A.C.A. § 17-24-508*, and as SRI admitted to the CFPB when it stated "[W]e show no contact was made with the consumer [Scroggin]", such conduct, specifically, failing to send Scroggin the required debt validation notice and opportunity to dispute and demand validation, violates the requirements of *A.C.A. § 17-24-508.*

---

[12] Although some sections of the FCRA which SRI violated do not allow for a private right of action under the FCRA, this does not change the fact violations of the FCRA, whether a private right of action or not exists under the FCRA, such conduct is still violations of the FDCPA, which does provide for a private right of action for all violations of the Act.

62. SRI, communicating to the credit reporting agencies were also communications to Scroggin that he owed a debt he did not owe. Such conduct violates the AFDCPA, as the communications to Scroggin were materially false and deceptive thereby violating *A.C.A. § 17-24-507(a)*.

63. The entire manner in which SRI has conducted itself in response to Scroggin's CFPB complaint is unfair and unconscionable conduct in connection with the collection of a debt, targeting Scroggin, causing Scroggin damages and thereby violating *A.C.A. § 17-24-507(a)*.

64. SRI's inaccurate reporting to Scroggins' credit reports violate the Fair Credit Reporting Act, specifically *15 U.S.C. § 623(a)(2)*. Debt collection conduct against Scroggin which violates the FCRA is a *per se* violation of the AFDCPA, specifically, *A.C.A. §§ 17-24-506(a), 17-24-507(a)*.

## COUNT III: VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

65. Scroggin incorporates by reference and re-alleges paragraphs (1) through (64).

66. SRI violated the FCRA, specifically *§ 1681s-2(b)ii*,[13] because SRI failed to conduct a reasonable investigation [re-investigation] of Scroggins' numerous disputes made directly to the consumer credit reporting agencies, even after SRI conceded to the CFPB that Scroggin's stance on the dispute was correct.[14]

67. Based on the fact SRI refused: (a) to respond to Scroggins' numerous disputes made directly to the credit reporting agencies by correcting its inaccurate reporting, thereby evincing it failed to conduct a reasonable investigation, (b) failed to respond to disputes made directly to SRI by Scroggin by correcting its inaccurate reporting, or responding to Scroggin in any manner, (c)

---

[13] Holds, A person shall not furnish information relating to a consumer to any consumer reporting agency if the information, is in fact, inaccurate.

[14] *15 U.S.C. § s-2 (a)(D)* defines "reasonable cause to believe that the information is inaccurate" as "[h]aving specific knowledge, other than solely allegations by the consumer, that would cause a **reasonable person** [emphasis added] to have substantial doubts about the accuracy of the information.

failed to notify the consumer reporting agencies that Scroggin disputed the information it was reporting, (d) used false and deceptive statements to the CFPB as it relates to its reporting of information about Scroggin to the credit reporting agencies, (e) even after Scroggin notified SRI three different times it [SRI] was violating the law and their promise to the CFPB it refused to remove the negative reporting to Scroggins' credit reports, and (f) the fact SRI's conduct meets the element of fraud under Arkansas law, this makes SRI's violations of the FCRA intentional and willful, subjecting SRI to punitive damages.[15]

## COUNT IV: VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT[16]

68. Scroggin incorporates by reference and re-alleges paragraphs (1) through (67).

69. The Arkansas Deceptive Trade Practices Act, A.C.A. *§ 4-88-107(a)* contains a non-exhaustive list of conduct that violates the ADTPA that states in part:

> Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following: (10) Engaging in any other unconscionable, **false, or deceptive act** [emphasis added] or practice in business, commerce, or trade.[17]

70. SRI's false and deceptive reporting to Scroggins' credit reports make SRI guilty of violating the ADTPA.

71. SRI's false and deceptive response to the Consumer Financial Protection Bureau make SRI guilty of violating the ADTPA.

---

[15] The threat of punitive damages under the FCRA is the primary factor deterring erroneous reporting by the reporting industry. See, Brim v. Midland Credit Mgmt. Inc., 795 F.Supp.2d 1255 (N.D. Ala. 2011).

[16] The Arkansas Supreme Court has recognized "the legislature's remedial purpose" in enacting the ADTPA and also that a "liberal construction of the [A]DTPA is appropriate." Arkansas ex rel. Bryant v. R & A Inv. Co., 985 S.W.2d 299, 302 (Ark. 1999).

[17] A private right of action under the ADTPA lies in *§ 4-88-113*.

72. SRI's violations of the FDCPA, AFDCPA, and the FCRA are all *per se* violations of the ADTPA.

73. SRI's fraud under Arkansas law is a *per se* violation of the ADTPA.[18]

### COUNT V: COMMON LAW FRAUD

74. Scroggin incorporates by reference and re-alleges paragraphs (1) through (73).

75. Under Arkansas law, fraud requires: (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. Goforth v. Smith, 991 S.W.2d 579, 586 (Ark. 1999). Fraud also extends to concealment of material information and nondisclosure of certain pertinent information. Farm Bureau Policy Holders & Members v. Farm Bureau Mut. Ins. Co. of Ark., Inc., 984 S.W.2d 6, 14 (Ark. 1998).

76. SRI made a false misrepresentation of a material fact when it lied to the CFPB that it had already requested the negative reporting to Scroggin's credit report be deleted; SRI knew it's representation to the CFPB and to Scroggin via the CFPF was false; SRI's false statement was made to induce Scroggin and the CFPB to take no further action against SRI, as Scroggin would have filed this Complaint immediately if SRI had not lied to the CFPB; and it is reasonable to believe SRI knew this fact SRI intended to and actually did "buy" itself almost three additional months of negative reporting with its false and deceptive statements to the CFPB and Scroggin; specifically, giving the false impression to Scroggin and the CFPB the issue Scroggin raised had been completely resolved as Scroggin had requested; Scroggin justifiably relied on the statements

---

[18] Although SRI's conduct is clearly willful, assuming, *arguendo*, the conduct was not willful, it would be irrelevant. See, Curtis Lumber Co., Inc. v. Louisiana Pacific Corp., 618 F. 3d 762 (8th Cir. 2010)("The ADTPA protects consumers from trade practices beyond common law fraud.))

from SRI to the CFPB and to Scroggin, via the CFPB; and, Scroggin suffered damages and continues to suffer damages, both statutory and actual damages, such as, but not limited to, Scroggin being denied housing without an extra deposit or being forced to pay a debt Scroggin does not owe.

77. SRI further committed fraud against Scroggin by concealing the material information and nondisclosure of the fact Scroggin disputed SRI's negative reporting to his credit report.

## COUNT VI: PROMISSORY ESTOPPEL

78. Scroggin incorporates by reference and re-alleges paragraphs (1) through (77).

79. Under Arkansas law, promissory estoppel requires that the plaintiff show four elements: (1) the making of a promise, (2) intent by the promisor that the promise be relied upon, (3) reliance upon the promise by the promisee, and (4) injustice resulting from a refusal to enforce the promise.[19]

80. SRI promised they submitted a removal request of its negative reporting to Scroggin's credit report(s); SRI intended for Scroggin and the CFPB to rely on this promise as a way of showing SRI had completely corrected its errors; Scroggin relied on SRI's promise by not immediately moving forward with the Complaint Scroggin has now filed; and the injustice to Scroggin is that Scroggin was denied housing without first paying a bill he did not owe and an additional security deposit and continued suffering of his credit score.

81. Even though SRI's promise was made to a third party, under Arkansas law this is irrelevant. See, Curtis Lumber Co., Inc. v. Louisiana Pacific Corp., 618 F. 3d 762 (8th Cir. 2010).

## DAMAGES AND PRAYER FOR RELIEF

82. Scroggin incorporates by reference and re-alleges paragraphs (1) through (81).

---

[19] In re Hilyard Drilling Co., 840 F.2d 596, 602 (8th Cir. 1988); see also K.C. Props. Of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC, 373 Ark. 14, 280 S.W. 3d 1, 14 (2008).

83. As it relates to statutory damages under the FDCPA, the Act states, "any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for statutory damages up to $1,000.00. *15 U.S.C. 1692k(a)(2)*.

84. Scroggin prays for statutory damages pursuant to the FDCPA in the amount of $1,000.00.

85. As it relates to actual damages under the FDCPA, the Act states, "Any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for actual damages." *15 U.S.C. § 1692k(a)(1)*.

86. Scroggin prays for the actual damage of an increase in his rental deposit of $885.00.

87. Scroggin prays for the actual damage of, but not limited to, emotional distress in an amount determined by the jury.[20]

88. As it relates to statutory damages under the AFDCPA, the Act states, "Any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for statutory damages up to $1,000.00." *A.C.A. § 17-24-512(a)(1)*.

89. Scroggin prays for statutory damages pursuant to the AFDCPA in the amount of $1,000.00.

90. As it relates to actual damages under the AFDCPA, the Act states, "Any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for actual damages. *A.C.A. § 17-24-512(a)(1)*.

---

[20] "Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under various names such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional summering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law." McCollough v. Johnson, Rodenburg & Lauinger, LLC, ___ F.3d ___, 2011 WL 746892 (9th Cir. 2011). [It is noteworthy The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court (Ret.), was sitting by designation pursuant to 28 U.S.C. § 294(a)].

91. Scroggin prays for the actual damage of an increase in his rental deposit of $885.00.

92. Scroggin prays for the actual damage of, but not limited to, emotional distress in an amount determined by the jury.

93. As it relates to damages under the FCRA, the Act states, "A consumer who demonstrates that a furnisher was negligent with respect to a consumer's disputed information is entitled to actual damages under FCRA *§1681o*.

94. Scroggin prays for actual damages under *§1681o* in the amount of $885.00 for an increase in Scroggin's required deposit to rent an apartment.

95. Scroggin prays for an amount determined by the jury, for emotional distress under §1681o.

96. FCRA §1681n states:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000…such amount of punitive damages as the court may allow; and in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

97. Scroggin's Complaint states a prima facie claim that Pinnacle's violations of the FCRA are willful violations of the Act; therefore, Scroggin prays for statutory damages[21] of $1,000.00 per willful[22] violation of the FCRA under §1681n, in the amount of $15,000.00, which is $1,000.00 per month which SRI reporting to Scroggin's credit that Scroggin owed a debt he did not owe.

---

[21] Statutory damages are in effect bounties—means of inducing private persons to enforce a regulatory law. See, Redman v. RadioShack Corp., 768 F.3d 622 (7th Cir. 2014).

[22] To act "willfully" is, for purposes of civil law, to engage in conduct that creates "an unjustifiably high risk of harm that is either known **or so obvious that it should be known**," Farmer v. Brennan, 511 U.S. 825, 836 (1994).

98. Scroggin prays for punitive damages under the FCRA in the amount of $50,000.00, for SRI's numerous and willful violations of the Act.

99. As it relates to damages pursuant to the Arkansas Deceptive Trade Practices Act, Scroggin prays for actual and punitive damages in an amount determined by a jury.

100. As it relates to damages under common law fraud, Scroggin prays for punitive damages in an amount determined by a jury. See, Ray Dodge, Inc. v. Moore, 251 Ark. 1036, 479 S.W.2d 518, 524 (1972)(punitive damages are appropriate in cases of fraud)).

101. As it relates to damages under promissory estoppel, Scroggin prays for an Order from this Court directing SRI to immediately comply with its promise made to Scroggin and the CFPB, and remove its negative reporting to Scroggin's credit report.

102. Scroggin prays for any other damages proven at trial that would be just and proper pursuant to Promissory Estoppel.

103. Scroggin prays for a reasonable attorney's fee as determined by the Court and for the costs in bringing this Complaint, pursuant to *15 U.S.C. §1692k(a)(3); A.C.A. § 17-24-102(a)(2)(A); A.C.A. § 4-88-113(f); and 15 U.S.C. § 1681n(a)(3)*.

104. Scroggin prays for any other relief the Court deems just and proper.

## JURY TRIAL DEMAND

105. Scroggin incorporates by reference and re-alleges paragraphs (1) through (104).

106. Scroggin demands trial by jury.

Respectfully Submitted,

_____
Victoria Leigh
LEIGH LAW PLLC
Attorney for Plaintiff
P.O. Box 21514
Little Rock, AR 72211
(501) 227-7627 Office
(501) 227-7628  Facsimile
v@leighlaw.com